IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIT HAMMICK,                                          Case No. 3:19-cv-00200-JR

        Plaintiff,                                    OPINION AND ORDER

    v.

MATTHEW SCOTT JACOBS and
FRANKLIN UNITED INC., an Idaho
corporation,

        Defendants.
_____

RUSSO, Magistrate Judge:

       Defendants Matthew Scott Jacobs and Franklin United, Inc. ("Franklin") move for

summary judgment on plaintiff Marit Hammick's claims pursuant to Fed. R. Civ. P. 56. Plaintiff

also moves for summary judgment in regard to her negligence per se claim. All parties have

consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance

with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the parties'

motions are denied.

## BACKGROUND

At all relevant times, Mr. Jacobs was employed by Franklin as a truck driver. Magic Transport, Franklin's sister company, performed maintenance and repairs on Franklin's fleet of vehicles, in conjunction with other independent mechanic shops.

On August 1, 2018, Mr. Jacobs was operating Franklin's truck southbound on I-5. While merging onto I-84 eastbound, defendants' truck dropped its driveline which then collided with plaintiff's car, causing personal injury to plaintiff.

In January 2019, plaintiff initiated this action in Multnomah County Circuit Court, alleging claims for common law negligence and negligence per se based on Or. Rev. Stat. § 815.020. As relief, plaintiff seeks $875,000 in damages. Defendants thereafter removed plaintiff's complaint to this Court.

On May 7, 2020, plaintiff filed the present motion solely as to liability on her negligence per se claim. On July 14, 2020, defendants cross-moved for summary judgment as to all claims. Briefing was completed in regard to these motions on October 12, 2020.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Plaintiff's allegations of negligence are premised on Or. Rev. Stat. § 815.020, which provides:

> (1) A person commits the offense of operation of an unsafe vehicle if the person does any of the following: (a) Drives or moves on any highway any vehicle which is in such unsafe condition as to endanger any person. (b) Owns a vehicle and causes or knowingly permits the vehicle to be driven or moved on any highway when the vehicle is in such unsafe condition as to endanger any person. (2) The offense described in this section, operation of an unsafe vehicle, is a Class B traffic violation.

Compl.¶ 7 (doc. 1-1).

Plaintiff argues that this statute "imposes strict liability," such that judgment in her favor is warranted because "it cannot be argued that the dropped drive line is not a violation of the safety statute." Pl.'s Mot. Partial Summ. J. 3 (doc. 65); see also Pl.'s Resp to Mot. Summ. J. 1-2 (doc. 106) (the sole "question presented to the Court by Plaintiff's Partial Motion for Summary Judgment is whether Defendant's violation of ORS 815.020 conclusively establishes Defendant's negligence").

Conversely, defendants assert they were acting reasonably under the circumstances, because it is undisputed Magic Transport inspected the truck the day before the accident and identified no issues with the driveline, such that plaintiff's claims fail. Defs.' Mot. Summ. J. 4-6 (doc. 83).

## I.     Preliminary Matters

Before reaching the substantive merits of the parties' cross motions, the Court must resolve plaintiff's evidentiary objection to the declarations of Deland Griggs (supervisor of vehicle maintenance at Magic Transport) and Roger Smedsrud (defendants' expert), as well as defendants' evidentiary objection to the declaration Thomas Fries (plaintiff's expert).

### A.     Plaintiff's Evidentiary Objection

Plaintiff objects to Mr. Griggs' and Mr. Smedsrud's declarations to the extent they refer to exhibits not in evidence – i.e., the truck's May 10 and July 30, 2018, inspection reports. Pl.'s Resp to Mot. Summ. J. 2-3 (doc. 106). Plaintiff argues further that defendants should be foreclosed from introducing these exhibits and, as a result, Mr. Griggs' sworn statements concerning maintenance of the truck are hearsay. Id. at 3.

Initially, defendants represent that the omission of these exhibits from Mr. Griggs' declaration was a mere "clerical error." Defs.' Reply to Mot. Summ. J. 1 (doc. 110). Regardless, it is well established that the court may consider evidence, even new evidence, that rebuts arguments raised by the plaintiff in her opposition to the defendant's summary judgment motion. See, e.g., United States v. Taibi, 2012 WL 553143, *4 (S.D. Cal. Feb. 21, 2012).

As such, defendants' submission of the declaration of Russ Vaughn (i.e., the Magic Transport mechanic who actually performed the inspections at issue), which includes the corresponding May and July 2018 reports, is sufficient to remedy any defects associated with

Mr. Griggs' or Mr. Smedsrud's declarations. See generally Vaughn Decl. Exs. 1-2 (doc. 111);

see also Schiewe v. Serv. Emp'rs Int'l Union Local 503, 2020 WL 4251801, *4 n.5 (D. Or. July

23), adopted by 2020 WL 5790389 (D. Or. Sept. 28, 2020) ("there are no hearsay concerns

where, as here, the affiant is testifying from personal knowledge") (citing Calmat Co. v. U.S.

Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004)). Importantly, plaintiff has had the

opportunity to review and respond to this evidence, as it was produced during discovery and, in

part, forms the basis of plaintiff's expert's opinion. Plaintiff's evidentiary objection is denied.

### B.    Defendants' Evidentiary Objection

Defendants argue that Mr. Fries' expert opinion should be stricken as speculative. Defs.'

Reply to Mot. Summ. J. 2-3 (doc. 110). Specifically, defendants assert that Mr. Fries "failed to

support his opinions with specific facts," such that the factual underpinnings of his conclusions

are unclear. Id. at 3.

The nonmoving party cannot rely on speculation or conjecture in meeting its burden of

production. British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). Pursuant to

Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied the principles and methods to
> the facts of the case.

Fed. R. Evid. 702.

Thus, under Rule 702, the trial court serves a "gatekeeper" function by determining

whether the expert testimony has "a reliable basis in the knowledge and the experience of [the

relevant] discipline." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Even if an

expert is generally qualified under Kumho Tire Co. v. Carmichael, 526 U.S. 137, 154 (1999), the

court must determine the reasonableness of applying the expert opinion to draw conclusions about the specific matter to which it is directed and may ultimately "conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997).

The record establishes that Mr. Fries' opinion is based on his review of the relevant summary judgment evidence (including the depositions of Mr. Griggs, Mr. Jacobs, and Mr. Smedsrud), the truck's service/maintenance records, technical manuals, and his decades of experience as a licensed and practicing mechanical engineer.[1] Fries Decl. ¶¶ 2-3, 10 (doc. 108); Fries Decl. Ex. A (doc. 108-1). As addressed in great detail below, both parties' experts agree as to the cause of the driveline's failure. Further, Mr. Fries' expert report clearly references specific facts and evidence that underly his conclusions, even if he does not discuss those facts in great detail. See, e.g., Fries Decl. ¶¶ 6-12 (doc. 108); see also Guidroz-Brault v. Mo. Pac. R.R. Co., 254 F3d 825, 831-32 (9th Cir 2001) (although "[t]he factual basis for the expert's opinion must be stated in the expert's affidavit[,] the underlying factual details need not be disclosed in the affidavit").

Given these circumstances, the Court finds that Mr. Fries' opinion does not present too great an analytical gap between the data and his factual conclusions. This is especially true considering that defendants are welcome to address any alleged analytical deficiencies in Mr. Fries' testimony at trial through cross-examination, their presentation of evidence, and their own expert's opinion. See Boydstun v. U.S. Bank Nat'l Assoc. ND, 187 F.Supp.3d 1213, 1216 (D. Or. 2016), aff'd, 726 Fed.Appx. 601 (9th Cir. 2018) ("when an expert meets the threshold

---

[1] Defendants do not appear to object to Mr. Fries' qualifications. While not dispositive, the Court notes that Mr. Fries appears to have reviewed a broader range of evidence than Mr. Smedsrud and his opinion is overall more detailed. See generally Smedsrud Decl. (doc. 86); Merkel Decl. Ex. B (doc. 107-2).

established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony").

Nevertheless, to the extent either parties' experts proffer legal conclusions, their testimony is of limited pertinence. See Parkinson v. Hyundai Motor Am., 796 F.Supp.2d 1160, 1172 n.6 (S.D. Cal. 2010) (disregarding an expert's legal conclusions); see also Pellegrini v. Gooder, 2012 WL 12893745, *2 (C.D. Cal. Dec. 6, 2012) ("[a]n expert's legal conclusions are unhelpful to the jury because they provide no information other than the witness's view of how the verdict should be read") (citation and internal quotations omitted). Defendants' request to strike Mr. Fries' opinion is denied.

## II.    Plaintiff's Partial Summary Judgment Motion

Plaintiff's motion hinges on whether Or. Rev. Stat. § 815.020 is a strict liability statute. In regard to negligence per se, defendants rely on Barnum v. Williams, 264 Or. 71, 504 P.2d 122 (1972), in support of the proposition "even if a plaintiff can prove a defendant violated a statute, defendants can be found not negligent if they were acting reasonably under the circumstances." Defs.' Mot. Summ. J. 4-5 (doc. 83).

Plaintiff argues that Barnum and its progeny are inapplicable because they concerned "vehicle operation statutes," whereas "this case involves a motor vehicle equipment *safety* statute." Pl.'s Mot. Partial Summ. J. 4-5 (doc. 65) (emphasis in original). Essentially, plaintiff maintains that, if Or. Rev. Stat. § 815.020 is not construed as a strict liability statute, she may not have a remedy because she "has no way of knowing the condition of Defendants' truck before the accident." Id.

Initially, plaintiff's argument concerning her purported lack of knowledge is misplaced. The parties have had ample opportunity to conduct discovery. Indeed, the Court granted

plaintiff's discovery extensions over defendants' objections. Plaintiff, in turn, obtained evidence concerning defendants' maintenance of the truck and its condition prior to the accident. In any event, discovery is discrete from what constitutes the proper legal standard.

Plaintiff's remaining contentions are unavailing. Namely, plaintiff's argument ignores the fact that cases concerning the proper operation of a vehicle inherently relate to safety, such that no meaningful distinction can be made on this basis. See Maquiel v. Adkins, 175 Or.App. 43, 47-50, 27 P.2d 1050, rev. denied, 333 Or. 73, 36 P.3d 974 (2001) (applying Barnum to a negligence per se claim brought pursuant to a vehicle safety statute – i.e., Or. Rev. Stat. § 811.585(1) – and affirming the lower court's jury instruction that a statutory violation "constitutes negligence in and of itself unless [the defendant proves] that he was acting as a reasonably prudent person under the circumstances").

Moreover, the case that plaintiff relies in support of her strict liability argument – Shahtout v. Emco Garbage Co., Inc., 298 Or. 598, 695 P.3d 897 (1984) – merely stands for the proposition that a safety statute may form the basis of a negligence per se claim, even if it does not independently create a tort. Id. at 601-02. Stated differently, Shahtout did not discuss or apply strict liability, and cited to Barnum with approval. Id. Significantly, plaintiff here does not argue that Or. Rev. Stat. § 815.020 creates a statutory tort or otherwise allege that this statute expressly or impliedly gives her any claim for damages. See generally Pl.'s Mot. Partial Summ. J. (doc. 65); Pl.'s Resp. to Mot. Summ. J. (doc. 106).

Thus, as this District has explained:

Traditional negligence per se actions rest on the premise that a court has created, or should now be willing to create, a common law negligence action for persons like the plaintiff . . . *A violation of a relevant statute does not make the defendant strictly liable as a matter of law*. Instead, the violation is prima facie evidence of negligence, which can be rebutted by evidence that the defendant's conduct was nevertheless reasonable under the circumstances.

Williams v. Invenergy, LLC, 2014 WL 7186854, *7-8 (D. Or. Dec. 16, 2014) (emphasis added; internal citations, quotations, and brackets omitted).

In sum, Oregon courts have expressly rejected plaintiff's position. Where, as here, there is evidence that the defendant acted reasonably under the circumstances, the plaintiff cannot prevail in a negligence action solely due to a statutory violation. Plaintiff's motion is denied.

## III.   Defendants' Summary Judgment Motion

Defendants contend that both of plaintiff's claims should be dismissed because they "acted reasonably and could not foresee the driveline failing." Defs.' Mot. Summ. J. 5-6 (doc. 83). In addition, defendants argue that they "were not cited for violating any statute related to the incident," such that summary judgment on plaintiff's negligence per se theory is appropriate.[2] Id.

As denoted above, "the doctrine of 'negligence per se' does not create a cause of action . . . . it refers to a standard of care that a law imposes within a cause of action for negligence." Gattman v. Favro, 306 Or. 11, 15 n.3, 757 P.2d 402 (1988). Accordingly, in order to prevail on a claim for negligence or negligence per se, the plaintiff must establish: (1) the defendant owed her a duty; (2) the defendant breached that duty; (3) a causal link exists between the defendant's breach and the plaintiffs injury, and (4) damages. Mason v. Householder, 58 Or.App. 192, 197, 647 F.2d 980 (1982); see also Cutsforth v. Kinzua Corp., 267 Or. 423, 432, 517 P.2d 640 (1973) ("proof of negligence, by presumption or otherwise, should not be confused with proof of causation").

---

[2] Defendants also assert that plaintiff "failed to allege [she] was a member of the class meant to be protected by the statute or the injury she suffered was a type the statute was enacted to prevent." Defs.' Mot. Summ. J. 4-5 (doc. 83). Yet defendants did not challenge plaintiff's pleadings at any point and the complaint plainly puts defendants on notice of the basis of her claims. In any event, as plaintiff repeatedly observes, Or. Rev. Stat. § 815.020 was clearly enacted to prevent motorists like plaintiff from unsafe driving conditions, such as errant drivelines that manifest in the middle of highway traffic.

Where the plaintiff is proceeding under a negligence per se theory, she must also demonstrate that the "statute in question . . . is relevant." Williams, 2014 WL 7186854 at *7 (citations and internal quotations omitted). This inquiry surrounds whether the plaintiff "is a member of the class intended to be protected, and [whether] the harm is of a kind which the statute was intended to prevent." Id. (citation and internal quotations omitted); see also Buoy v. Soo Hee Kim, 232 Or.App. 189, 204, 221 P.3d 771 (2009) (outlining the elements of negligence per se).

In regard to either negligence or negligence per se, evidence of the defendants' reasonableness is sufficient to rebut the presumption of negligence created by a breach of the standard of care. Barnum, 264 Or. at 78-79; see also Uihlein v. Albertson's, Inc., 282 Or. 631, 637, 580 P.2d 1014 (1978) ("[s]ummary judgment for the defendant may be granted only when the court can say that the defendant's conduct clearly meets the standard of reasonable conduct deemed to have been set by the community"); Fraker v. Benton Cnty. Sheriff's Office, 214 Or.App. 473, 490, 166 P.3d 1137 (2007) ("[f]or liability to attach under a general foreseeability theory, a trier of fact must be able to find that there was a reasonably foreseeable risk of harm to the plaintiff and that the defendant's conduct was unreasonable in light of that risk").

Here, the Court finds defendants' first argument unpersuasive. As discussed herein, the statute that underlies an allegation of negligence simply sets the standard of care. Williams, 2014 WL 7186854 at *8. Therefore, whether or not defendants sustained criminal liability pursuant to Or. Rev. Stat. § 815.020 is immaterial to the issue of whether they violated the standard of care for the purposes of determining civil liability. Critically, defendants do not dispute the truck's driveline was dropped on a highway and subsequent collision with plaintiff's vehicle, or that the

police were contacted following the accident but simply never arrived on scene. Merkel Decl. Ex. C, at 25 (doc. 107-3).

Furthermore, the Court finds that a disputed issue of material fact exists in regard to the reasonableness of defendants' actions. The evidence of record demonstrates that Franklin regularly conducted preventative maintenance inspections.[3] Jacobs Decl. ¶ 2 (doc. 84); Vaughn Decl. Exs. 1-2 (doc. 111). It is also undisputed that Mr. Jacobs "believed the truck was in safe working condition" and that he was not aware of any issues associated with the "driveline before or on the date of the accident." Jacobs Decl. ¶ 2 (doc. 84); Griggs Decl. ¶¶ 2-3 (doc. 85); Vaughn Decl. ¶¶ 2-3 (doc. 111). Based on defendants' most recent inspection reports from May 10, 2018, and July 30, 2018, Mr Smedsrud opined that defendants "acted reasonably" and "should not have known that the driveline would fail." Smedsrud Decl. ¶¶ 2-4 (doc. 86); Merkel Decl. Ex. B, at 9-23 (doc. 107-2).

Yet it is undisputed that the driveline was removed and reinstalled between May 10, 2018, and July 30, 2018, and there is no documentary evidence that defendants[4] or any other

---

[3] Preventative maintenance inspections are routine inspections that are "supposed to [take place] every 5,000 miles" and therefore are not intended to address the suitability of a vehicle for a particular trip. Merkel Decl. Ex. A, at 11-12 (doc. 107-1). The only preventative maintenance inspections in the record before the Court – from May 10, 2018, and July 30, 2018, occurred approximately 15,000 miles apart. Vaughn Decl. Exs. 1-2 (doc. 111).

[4] As denoted in Section I(A), Mr. Vaugh submitted a declaration in support of defendants' reply, in which he stated under penalty of perjury that he personally completed the preventative maintenance inspections at issue and found "[n]o issues . . . with the driveline." Vaughn Decl. ¶¶ 2-3 (doc. 111). However, as acknowledge by Mr. Smedsrud and Mr. Griggs, the July 30, 2018, report, titled "POST [Preventative Maintenance] REPAIRS NEEDED," does not specifically reference the driveline or detail the parameters of the inspection that occurred. Vaughn Decl. Exs. 1-2 (doc. 111); see also Merkel Decl. Ex. A, at 12-14 (doc. 107-1) (Mr. Griggs testifying that no records were kept in regard to Mr. Vaughn's visual and physical inspection of the driveline on the day before the accident); Merkel Decl. Ex. B, at 9-23 (doc. 107-2) (Mr. Smedsrud testifying that he reviewed three annual or preventive maintenance inspections prior to issuing his opinion, only one of which – i.e., the May 10, 2018, inspection – expressly referenced

party performed a thorough inspection of the driveline prior to plaintiff's accident. Merkel Decl. Ex. A, at 8-9, 16-18, 20-22 (doc. 107-1); Fries Decl. ¶ 4 (doc. 108). This is significant because both parties' experts testified that the driveline would not have failed had it been correctly reinstalled using new bolts and thread lockers. Merkel Decl. Ex. B, at 25-27 (doc. 107-2); Fries Decl. ¶¶ 4, 6, 8-9 (doc. 108).  Mr. Fries also opined that, had a "thorough pre-trip inspection" occurred by a mechanic, the "loose driveline" would have been identified. Fries Decl. ¶¶ 5, 12, 14 (doc. 108). Finally, Mr. Griggs testified that Franklin's drivers are "required by federal law to do a post- and pre-trip inspection," but there is no evidence that a pre-trip inspection occurred in this case. Merkel Decl. Ex. A, at 5, 11-12 (doc. 107-1); Merkel Decl. Ex. B, at 11-12, 17 (doc. 107-2); Merkel Decl. Ex. C, at 12-13 (doc. 107-3).

Critically, defendants do not address or attempt to refute this evidence (beyond arguing Mr. Fries' opinion is conclusory). Defs.' Reply to Mot. Summ. J. 2-4 (doc. 110). Instead, defendants assert, for the first time in their reply brief, that plaintiff failed to show causation and, by extension, a violation of Or. Rev. Stat. § 815.020 because the bolts at issue "could have become loose after [they were] last inspected and before the incident in this case," and, in any event, there is no indication that the loose bolts created an unsafe condition that posed a probable risk of harm or loss. Defs.' Reply to Mot. Summ. J. 3-4 (doc. 110).

Concerning the latter, it is beyond reasonable dispute that the truck's dropped driveline constituted an unsafe risk sufficient to endanger another driver. Regarding the former, as denoted above, both parties' experts agree that reused or improperly torqued bolts were the cause of the driveline's failure. Mr. Fries resolved that this condition "most probably began" around the time

_____

the driveline). Regardless, in light of Mr. Fries' opinion, a disputed issue of material fact exists concerning whether defendants' July 30, 2018, inspection was reasonable under the circumstances.

the driveline was reinstalled (i.e., when the used bolts were placed or improperly torqued, and prior to July 30, 2018) and should have been discovered by appropriate mechanical inspection; although defendants broadly object to Mr. Fries' opinion, determinations relating to what caused the driveline's failure, when the bolts started to loosen, and whether this condition was observable are within the purview of his expertise as a mechanical engineer, and Mr. Smedsrud's testimony is not wholly to the contrary. Fries Decl. ¶¶ 4, 6-9, 12-14 (doc. 108); see also Merkel Decl. Ex. B, at 30 (doc. 107-2) (Mr. Smedsrud indicating that the bolts at issue could become loose or back out "rapidly" or "it could be a long time"). Thus, even assuming that these arguments were properly raised, they do not alter the outcome of this case. See Ruiz v. Fernandez, 949 F.Supp.2d 1055, 1063 (E.D. Wash. 2013) ("a party may not raise new legal issues for the first time in its reply brief") (citing Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)).

In sum, given plaintiff's evidence, the Court cannot conclude that defendants' conduct in maintaining the truck clearly meets the community standard of care.[5] See Hoke v. May Dep't Stores Co., 133 Or.App. 410, 418, 891 P.2d 686 (1995) (declaration from the plaintiff's attorney evincing that the defendant's conduct did not comply with industry standards was sufficient to defeat summary judgment). Therefore, whether defendants' conduct was reasonable under the

_____

[5] Because a disputed issue of material fact exists concerning whether defendants' actions were reasonable under the circumstances, the Court need not definitely resolve the functional impacts of Barnum and its progeny, especially because both parties briefs are silent as to this issue. The Court nonetheless notes that, under Barnum, the defendant's evidence of reasonableness forecloses a finding of "negligence as a matter of law" – it does, as Franklin and Mr. Jacobs imply, categorically establish an entitlement to summary judgment. Barnum, 264 Or. at 78-79. In other words, evidence of the defendant's reasonableness merely creates a "question of the party's negligence for the jury"– or, in summary judgment parlance, a disputed issue of material fact. Id. Accordingly, even presuming defendants' evidence of reasonableness was unrefuted, it is questionable whether summary judgment would be appropriate.

circumstances presents a question of material fact that precludes summary judgment on plaintiff's claims.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment (doc. 65) and defendants' Motion for Summary Judgment (doc. 83) are denied. The parties' associated evidentiary objections (docs. 106, 110) are likewise denied. Defendants' request for oral argument is denied as unnecessary. The parties' Pretrial Order is due forty-five (45) days from the date of this Opinion.

IT IS SO ORDERED.

DATED this 19th day of October, 2020.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge